9462

### STATE v. KILGORE.

(89 S. E. 668.)

1. CRIMINAL LAW—APPEAL—INSTRUCTIONS CONSIDERED AS A WHOLE.—In determining whether instructions on a prosecution for crime present error, they must be considered in their entirety.

2. ASSAULT AND BATTERY—APPEAL AND ERROR—INSTRUCTIONS.—In a prosecution for assault and battery, the instruction of the Court, referring to the many times in which the plea of self-defense is asserted, where the facts do not make out a case of necessity, *held* not erroneous.

Before MEMMINGER, J., Greenville, Fall term, 1915. Affirmed.

Jesse Kilgore was convicted of assault and battery with intent to kill, and he appeals.

The following are defendant's exceptions:

(1) That the presiding Judge erred in intimating his opinion as to the weight and sufficiency of the evidence constituting the defense of self-defense, offered by the defendant, in that the presiding Judge spoke slightingly and sneeringly of "this same old self-defense."

(2) That the presiding Judge erred in charging upon the facts, and in telling the jury that the law of self-defense is a hard rule to apply, "because men generally consider that it is a sign of cowardice to seek to get away from the difficulty," when such statement and expression has nothing to do with the law of the case, and is a statement of fact of which the Court cannot legally take judicial notice.

(3) That the presiding Judge erred in charging the jury that it is "often a mistaken idea as to the necessity for kill-

ing; that people go to work and shoot and kill others and come into Court and set up self-defense, and seek to get the jury to release them, when really the facts don't make out any case of self-defense." This expression is a plain violation of the constitutional prohibition against charging upon the facts, since the facts stated are matters that the Court cannot take judicial notice of, and while spoken of in general terms, the same must necessarily have been understood by the jury to apply to the facts of the case at bar. The use of such expressions plainly makes· the presiding Judge a participant in the trial of the issues of fact, all to the prejudice of the defendant.

(4) Error in the presiding Judge in his supplemental charge to the jury, when it came in for further instructions, as to the extreme penalty in case of conviction. The jury, having received the case at 11:30 o'clock a. m., returned to the Court room at 3:25 o'clock p. m., and asked the effect of the extreme limit of a sentence in such a case. After giving the information, the presiding Judge further proceeded to charge the jury as follows: "I want you to understand while you are out here that we don't want to make a mistrial. You see the great number of witnesses that we have examined here in this case. All those witnesses on behalf of the State have to be paid for by the county, and it involved a great deal of expense to try and retry these cases; sooner or later some jury has to decide it. The Court has been sitting here—this is now the fifth week that I have been here, and there hasn't ben a single mistrial made"—the error being as follows:

(a) It was improper for the Judge to tell the jury, "We don't want a mistrial," because the wishes and desires of the Judge are immaterial and should not influence a jury, and if they do, the Judge thereby becomes a participant in the trial of the issues of fact.

(b) The expense to the State and county was not a proper consideration by which to arrive at the truth of the charge.

(c) The fact that the Court had been sitting five weeks and there had not been a single mistrial was not a proper consideration for the jury, and the absence of such mistrials may have been due to the same urgent language by the Court in previous cases.

(d) It is more important to arrive at a just verdict than a quick verdict.

(e) The State should not count expense in administering justice to its citizens.

(f) It was not proper to seek to influence the jury in the case at bar by telling them that the other juries for five weeks had agreed on verdicts, as the case being tried was not like any other case, and it is no more reason to urge a verdict in a given case because the previous cases had resulted in verdicts than it would be to expect the jury to find a verdict of "not guilty" because all previous juries had found verdicts of "not guilty."

(g) The mere fact that some jury must in the future decide the case would not be conclusive, because in a future trial the testimony would probably be different from the testimony at the trial before Judge Memminger.

(h) That it was error to tell the jury that it was much to the credit of the other juries that they realized that "their object was to decide cases—go ahead and decide them"—and that the Judge "hoped that in the case being tried the jury would do the same," whereas, it is not the object of a jury merely to decide a case by a majority vote, or by tossing a coin, or by haphazard, but the law requires a verdict to speak the conviction of each individual juror as to the truth of the case being tried, and it is more important that the rights of the individual be conserved by an orderly administration of justice, according to the forms of law, than that expense be saved and litigation disposed of.

*Mr. J. J. McSwain,* for appellant, cites : Branson Instructions to Juries, sec. 20; Moore on Facts, secs. 19, 20, pp. 24, 26, 33; 103 S. C. 277; 98 S. C. 299; 38 Cyc. 1674.

*Mr. Assistant Attorney General Sapp,* for the State.

July 14, 1916.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The defendant was indicted for assault and battery with intent to kill, and the jury rendered a verdict of guilty, with a recommendation of mercy, whereupon his Honor, the presiding Judge, sentenced him to serve five years, either upon the public works of the county, or in the State penitentiary.

The appellant's exceptions (which will be reported) relate solely to the charge. In determining whether the assignment of error can be sustained it is necessary to consider the charge in its entirety.

The cases of *State* v. *Jones,* 86 S. C. 17, 67 S. E. 160, and *State* v. *Miller,* 88 S. C. 485, 70 S. E. 1061, show that the exceptions cannot be sustained.

Appeal dismissed.

MESSRS. JUSTICES HYDRICK and GAGE concur in the opinion of the Court.

MR. JUSTICE FRASER, *dissenting.* I dissent. I think that his Honor erred when he said to the jury :

"And it is so often a mistaken idea as to this necessity that people go to work and shoot and kill others and come into Court and set up self-defense and seek to get juries to let them off, when really the facts do not make out any case of necessity."

In the case of the *State* v. *Price,* 103 S. C. 280, 88 S. E. 295, this Court said :

"We desire to·say in this connection that in the trial of a case of this sort it is unsafe, if not a dangerous thing, to·tell a jury what another jury in another county, in another case, has done."

It seems to me that, if it is dangerous to refer to another case, it is still more dangerous to refer to what often happens. Besides, this statement, in my judgment, discredits self-defense.

Mr. Justice Watts concurs in the dissenting opinion of Mr. Justice Fraser.